CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| DAVID TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:25-cv-00005 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| TIMOTHY R. DEROSHA, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Virginia State Trooper Timothy R. Derosha moves under Federal Rule of Civil Procedure

12(b)(6) to dismiss the second count of David Tate's second amended complaint (Dkt. No. 34).[1]

This count alleges that Derosha, in his individual capacity, is liable under 42 U.S.C. § 1983 for

seizing Tate unconstitutionally.  (Dkt. No. 36.)  The court has held a hearing (Dkt. No. 43) and

considered the briefs (Dkt. Nos. 37, 38, 39).

For the reasons discussed below, Count II does not plausibly allege that Derosha seized

Tate.  Even if it did, Derosha could not reasonably have known that his alleged conduct effected

a seizure, so he is entitled to qualified immunity.  Because it fails to state a claim upon which

relief can be granted, the count will be dismissed.

I.  BACKGROUND

As it must, the court takes Tate's relevant factual allegations in the light most favorable

to him.  *See Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023); (2d Am.

Compl. ¶¶ 8–18, Dkt. No. 34).  In May 2024, Tate was driving his personal vehicle in Salem,

Virginia, when he saw State Trooper Derosha, in his police uniform and marked police vehicle,

---

[1] Derosha does not move to dismiss the first count, which makes speech-retaliation claims under the
federal and state constitutions.  Both counts seek damages against Derosha in his individual capacity.

traveling the other way.  Tate raised his middle finger at him, and Derosha made an unlawful U-turn and then followed Tate, without activating his vehicle's emergency lights, while Tate drove home.  Tate pulled into his driveway and exited his vehicle.  Derosha arrived shortly thereafter and parked perpendicular to the driveway, blocking it.

"What's your problem?" Derosha asked.

"What's your problem?" Tate responded.

"I didn't drive by and flip you off," replied Derosha.

Derosha ran Tate's license plate through a law-enforcement database and addressed Tate by his full name.  Tate asked what Derosha was doing, and Derosha answered, "Let me check this warrant here."  Tate protested he did not have a warrant.

"Yup," Derosha responded.

Tate asked what it was for, and Derosha intoned he would "find out."  Tate said he would pull his car over so it was out the way.

Derosha used an expletive toward Tate and drove off.  He never turned on his police lights, and he never had a warrant to arrest Tate.  Tate contends that he suffered psychological injuries because of Derosha's conduct, which Tate alleges was a violation of his Fourth Amendment rights.[2]

## II.  ANALYSIS

### A.  Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests a pleading's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To survive, the

---

[2]  At the hearing, Tate's counsel made clear he relies only on federal, not state, law.

pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The court must construe all facts and reasonable inferences "in the light most favorable to the nonmoving party," *Kashdan*, 70 F.4th at 700, but need not accept "unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano*, 521 F.3d at 302 (quoting *E. Shore Markets, Inc. v. J.D. Assocs.*, 213 F.3d 175, 180 (4th Cir. 2000)).

## B. Fourth Amendment Seizures of Persons

The Fourth Amendment proscribes unreasonable seizures of persons—that is, arrests. *Torres v. Madrid*, 592 U.S. 306, 311–12 (2021). These include a restraint of liberty through submission, even by passive acquiescence, to an intentional show of authority. *Brendlin v. California*, 551 U.S. 249, 254–55, 260–61 (2007); *California v. Hodari D.*, 499 U.S. 621, 625–28 (1991); *United States v. Stover*, 808 F.3d 991, 995–96 (4th Cir. 2015). An officer has made this show of authority where, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding of two justices); *see INS v. Delgado*, 466 U.S. 210, 215 (1984) (adopting *Mendenhall* test); *Michigan v. Chesternut*, 486 U.S. 567, 572–74 (1988); *Florida v. Bostick*, 501 U.S. 429, 434–38 (1991). The reasonable person standard is an "objective one," and "its proper application is a question of law." *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (citations omitted).

An incident failing this objective test does not involve a show of authority, and, absent any use of physical force, it cannot be a seizure. *Hodari D.*, 499 U.S. at 628. "Such 'consensual encounters' demand no inquiry into the reasonableness of the officer's justification for engaging the individual, because the Fourth Amendment is not at all implicated." *United States v. Cloud*,

3

994 F.3d 233, 241 (4th Cir. 2021) (quoting *Bostick*, 501 U.S. at 434); *accord Chesternut*, 486

U.S. at 572, 576; *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).

Even where there is a sufficient "show of authority" to make a reasonable person feel he

or she is not free to leave, a seizure does not occur unless the person acquiesces or submits to the

show of authority.  *Jones*, 994 F.3d at 243–44; *Stover*, 808 F.3d at 995–96.

**C.  Derosha Did Not Make a Show of Authority**

The Fourth Circuit's show-of-authority cases distinguish pedestrians from persons in

vehicles.  *United States v. Smith*, 21 F.4th 122, 132 (4th Cir. 2021); *accord United States v.*

*Allison*, 398 F. App'x 862, 864 (4th Cir. 2010) (unpublished opinion).  For example, the

defendant in *Allison* exited a vehicle just before police blocked a driveway, and the court held

any seizure of the vehicle did not thereby seize him.  398 F. App'x at 864.  Here, Tate exited his

vehicle before Derosha parked perpendicular to his home driveway, so the court "must focus on

[his] rights as a pedestrian."  *Id.*

"[S]ix broad, non-exclusive categories of facts" have informed the Fourth Circuit's

show-of-authority cases:

> (1) how many officers were present; (2) whether officers were in uniform and/or
> displayed firearms; (3) whether any officer touched the defendant or made any
> attempt to block or restrain his movement; (4) if the officer's questioning was
> "'conversational' rather than 'intimidating'"; (5) whether the officer informed the
> defendant that he suspected him of illegal activity, or treated the encounter as
> "routine"; and (6) if the officer asked for identification, how quickly the officer
> returned it to the defendant.

*Cloud*, 994 F.3d at 242–43 (quoting *United States v. Gray*, 883 F.2d 320, 322–23 (4th Cir.

1989)).  One Supreme Court and three Fourth Circuit cases inform the court's analysis of these

factors here.

4

First, in *Michigan v. Chesternut*, 486 U.S. 567 (1988), Chesternut, selling drugs one afternoon, saw four officers in a marked cruiser approach his street corner. *Id.* at 569. He turned and ran, and the cruiser followed him around the corner "to see where he was going." *Id.* It quickly caught up and drove alongside him for a short distance. *Id.* The Supreme Court observed the officers never "activated a siren or flashers," "commanded respondent to halt," "displayed any weapons," or "operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement," so their pursuit "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement." *Id.* at 574–75. Without more, the Court held, this was not a seizure. *Id.* at 576.

Similarly, in *United States v. Weaver*, 282 F.3d 302 (4th Cir. 2002), an armed, uniformed officer took Weaver's driver's license and asked him to come to a crime scene. *Id.* at 307. Weaver agreed. *Id.* The officer then patted him down and, keeping his license, drove him in a police cruiser. *Id.* The court held the officer's retention of the license was not dispositive, as "Weaver was a pedestrian and could have walked away" without it. *Id.* at 311. "Admittedly, doing so may have created an awkward situation . . . , but awkwardness alone does not invoke the protections of the Fourth Amendment . . . ." *Id.* The officer never "threatened Weaver or brandished his weapon," and "the encounter occurred in a public parking lot in the middle of the day." *Id.* at 312. "Weaver chose to stay and have a dialogue," the court concluded, so the encounter was "consensual." *Id.*

Here, Derosha was like the officers in *Chesternut* and *Weaver*. 486 U.S. at 574–76; 282 F.3d at 307, 311–12. Those officers respectively accelerated to drive alongside Chesternut, 486 U.S. at 574–76, and took Weaver's license, patted him down, and transported him in a police

5

cruiser, 282 F.3d at 307. Derosha followed Tate, parked behind his unoccupied vehicle, ran a license plate check, said that a warrant had been issued, and cursed or insulted him. The Supreme Court held Chesternut should not have been too intimidated to go about his business, 486 U.S. at 575–76, and the Fourth Circuit held Weaver could have left, albeit awkwardly, at any time, 282 F.3d at 311–12. Nothing Tate alleges indicates a contrary result. Derosha's unlawful U-turn, pursuit, and alleged deceit about the existence of a warrant were far short of the aggressive conduct exhibited in *Chesternut*, 486 U.S. at 575, or the physical invasiveness held insufficient in *Weaver*, 282 F.3d at 311–12. Although Derosha's blocking of Tate's nearby vehicle weighs in Tate's favor, s*ee Jones*, 678 F.3d at 302, it does not tip the scales enough to overcome all the other circumstances here, which show that a reasonable person would have felt free to leave. Just as in *Chesternut* and *Weaver*, Tate reasonably could have ignored Derosha, but he made the choice to engage with him.

By contrast, the facts of two cases where the Fourth Circuit found sufficient shows of authority demonstrate the relative insufficiency of the show of authority alleged here. In *United States v. Jones*, 678 F.3d 293 (4th Cir. 2012), two uniformed officers turned around their marked cruiser and, without activating the lights or sirens, followed Jones's car, containing four men, into the driveway of an apartment complex. *Id.* at 296. When Jones parked, the officers exited the cruiser and left it blocking Jones's car. *Id.* at 297. Jones emerged and stood by the driver's door while some of his passengers walked away, and the officers immediately moved to stand at the rear of his car with their side arms holstered. *Id.* Jones asked why they were being stopped, and an officer responded, "Because it's a drug area." *Id.* at 297–98. Then, the officer requested, "Hey, guys, can you do me a favor? Just lift your shirt for me so I can see you have no guns." *Id.* at 297. Jones and his remaining companion complied. *Id.* The officer then asked, "Hey,

6

guys, would you mind if I pat you down for weapons?" *Id.* The men turned around and raised their arms, and the officer patted them down. *Id.* The court placed importance on the fact that the officers' approach was not routine. The encounter "began with a citizen *knowing* that the police officers were conspicuously following him, rather than a citizen, previously unaware of the police, being approached by officers seemingly at random." *Id.* at 300. The officers then blocked Jones's car from exiting and proceeded immediately to ask him to lift his shirt and consent to a pat down. *Id.* at 301–04. This would reasonably suggest "that the officers suspected him of some sort of illegal activity in a 'high crime area,' which, in turn, would convey that he was a target of a criminal investigation and thus not free to leave or terminate the encounter." *Id.* at 304. The court held, "[A]ll of these facts viewed together crystallize into a Fourth Amendment violation." *Id.* at 305.

And, in *United States v. Cloud*, 994 F.3d 233 (4th Cir. 2021), Cloud emerged from a motel to find that two armed, uniformed officers had positioned their marked car, without activating the emergency lights, to block his vehicle and were shining their flashlights onto and speaking with its four occupants. *Id.* at 238–39. He brusquely got in the driver's seat, shut the door, and looked over his shoulder to back out, but the officers did not "retreat[] from their respective positions on each side of the car and continued to focus their flashlights on [its] occupants." *Id.* at 239, 243. After an initial "exchange of mere pleasantries," one of the officers started questioning Cloud about guns and drugs. *Id.* "Given this factual progression," the court held, "a reasonable person would have concluded that he was not free to leave at that point." *Id.* at 243.

The incident here may readily be distinguished from those in *Jones* and *Cloud*. 678 F.3d at 296–305; 994 F.3d at 238–39, 243. There, multiple officers left their vehicles blocking the

suspects' vehicles, approached on foot, made statements and requests clearly conveying their suspicions of crime, and patted down or shone flashlights on the suspects. *Jones*, 678 F.3d at 296–98; *Cloud*, 994 F.3d at 238–39. Here, Derosha was the only officer present, and he remained in his vehicle, never physically engaging Tate and never showing a firearm. He only followed Tate after Tate insulted him, parked behind Tate's empty vehicle, and referred to a warrant.

In *Jones*, the Fourth Circuit dwelled on the facts that Jones knew he had been followed under criminal suspicion, his vehicle had been blocked, and he immediately had been patted down "[b]ecause it's a drug area." 678 F.3d at 297–98, 300–05. None of this was routine, so Jones reasonably believed "he was a target of a criminal investigation and thus not free to leave." *Id.* at 304. And, in *Cloud*, the circuit held the unretreating officers, blocking Jones's exit and shining lights into his vehicle, only made a show of authority when they started asking about guns and drugs. 994 F.3d at 243. Here, Tate may have known he was being followed by Derosha, and Derosha eventually blocked Tate's vehicle, but that is where the similarities end. Derosha did not question Tate about possible criminal behavior but simply ran a plate check. He never asked for Tate's identification, asked him to consent to a patdown, or directed him to stop moving. And, whatever else may be said of Derosha's words, they were not overtly coercive or threatening. This was an unpleasant conversation, not a show of authority. *See Cloud*, 994 F.3d at 242–43.

Indeed, the absence of invasive conduct here is notable. A personal seizure usually comes with at least some interrogation, pat-down, express restraint, isolation, securing of the scene, seeking of consent, physical search, or charges, etc. Derosha's database check and use of Tate's full name did not approach this level of invasive conduct. And Derosha did not make

8

escalated use of the police vehicle.  A reasonable person, trying to tell whether he were free to walk away from an officer in a marked vehicle, would look for the emergency lights or spotlight, listen for the siren or public-address speaker, or see whether the officer exited the vehicle.  *See Chesternut*, 486 U.S. at 575; *Hodari D.*, 499 U.S. at 628 (discussing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)); *Stover*, 808 F.3d at 997; *Jones*, 678 F.3d at 302–03.  The court does not discount Derosha's block of the driveway, *see Jones*, 678 F.3d at 301–02, but, given Derosha's status as a pedestrian, that fact is not dispositive.  Without further signs, this would not have made a reasonable pedestrian feel himself restrained.  *See Smith*, 21 F.4th at 132; *Allison*, 398 F. App'x at 864.

Tate's contrary points fail.  Even in their best light, his allegations about an unlawful U-turn and perpendicular parking job cannot plausibly support the grave inferences he urges.  *See Chesternut*, 486 U.S. at 574–76.  And Tate places importance on his allegation that he "advised Derosha that he would pull his car over so that it was out of the way, in preparation of being arrested."  (2d Am. Compl. ¶ 14, Dkt. No. 34.)  But this rather undermines his claim that he was under restraint, as a reasonable person would be unlikely to believe himself free to move his vehicle but not to leave.

Finally, Tate likens himself to the grandmother in *Bumper v. North Carolina*, 391 U.S. 543 (1968), who reasonably believed she could not resist a warrant.  *Id.* at 546–50.  But there is a factual chasm between the four officers who told her, "I have a search warrant to search your house," and Derosha's, "Let me check this warrant here. . . . Yup."  *Id.* at 546.  She reasonably believed she could not refuse; a reasonable person in Tate's shoes, "in view of all of the circumstances" discussed above, would have believed he could.  *Mendenhall*, 446 U.S. at 554.

9

Considering the whole of Tate's allegations, Derosha's driveway block and alleged deceit about a warrant would not have made a reasonable person believe he was not free to leave.

Tate does not plausibly allege that Derosha made a show of authority, so he cannot state a claim under the Fourth Amendment. *See Hodari D.*, 499 U.S. at 628. Therefore, the court need not examine whether he submitted to Derosha or whether Derosha's conduct was reasonable. *See Chesternut*, 486 U.S. at 572, 576; *Cloud*, 994 F.3d at 241; *Weaver*, 282 F.3d at 309.

## D. Derosha Is Entitled to Qualified Immunity

Where a police officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects officers from "'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)); *see Somers v. Devine*, 132 F.4th 689, 698 (4th Cir. 2025) (referring to the same language as the "old chestnut"). This immunity will lie unless (1) the officer violated a right and (2) the right, defined at the appropriate level of specificity, was clearly established. *See Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023). To determine whether the right was clearly established, the court "ordinarily need look no further" than the decisions of the Supreme Court, Fourth Circuit, and Supreme Court of Virginia. *Id.* The officer seeking the immunity bears the burden of proof. *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018).

The above discussion settles the first of these prongs—the Fourth Amendment was not violated—and is enough to entitle Derosha to qualified immunity. He also prevails at the second prong. In May 2024, Derosha was on fair notice of the *Mendenhall* test, 446 U.S. at 554, as

applied to the pedestrians in *Chesternut*, 486 U.S. 567, *Weaver*, 282 F.3d 302, *Jones*, 678 F.3d 293, and *Cloud*, 994 F.3d 233.  *Chesternut* and *Weaver* held that conduct more aggressive and invasive than Derosha's did not amount to shows of authority.  486 U.S. at 575; 282 F.3d at 311–12.  And Derosha's perpendicular parking and alleged mention of a warrant were short of the investigative tactics, like a drug-area pat-down or an interrogation about guns, that *Jones* and *Cloud* clearly established as shows of authority.  678 F.3d at 305; 994 F.3d at 243.  Even if Derosha's conduct were to have violated the Fourth Amendment, a reasonable officer with knowledge of these cases would not have known so.  *See Garrett*, 74 F.4th at 588–89.  At worst, he made a "bad guess[] in [a] gray area[]."  *See Willingham*, 412 F.3d at 558 (quoting *Maciariello*, 973 F.2d at 298).  Accordingly, Derosha is also entitled to qualified immunity on this prong.

### III.  CONCLUSION

Derosha did not seize Tate and, in any case, is entitled to qualified immunity foreclosing Tate's seizure claim.  Accordingly, Derosha's partial motion to dismiss (Dkt. No. 36) will be granted, and Count II of Tate's second amended complaint (Dkt. No. 34) will be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).  Tate's federal and state speech-retaliation claims will proceed.  A consistent order will be issued.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge

11